IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL B. NESTER,

    Plaintiff,                    No. 2:10-cv-01685 KJN

    v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.                <u>ORDER</u>

/

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income benefits under Title XVI of the Act.[1] In his motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case erred: (1) at step three, by "incorrectly finding that Plaintiff did not meet [Social Security Administration] Listing 1.02A" because the ALJ improperly relied on an "incorrect statement" of that listing by the medical expert; (2) by failing to give "proper weight to the medical records

---

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301. (Dkt. Nos. 7, 12.)

1

from Placer County Medical Clinic"; (3) by "improperly discount[ing]" plaintiff's credibility; and (4) at steps four and five in the "disability analysis" and in reliance upon the [Social Security Administration] Medical-Vocational guideline regulations ("the grids"). (See generally Pl.'s Mot. for Summ. J., Dkt. No. 16.) Defendant filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 17.) Plaintiff filed an opposition to the Commissioner's motion. (Pl.'s Opp'n, Dkt. No. 18.) For the reasons stated below, the court grants plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment.

I.   BACKGROUND[2]

On March 4, 2008, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits, both of which alleged a disability onset date of April 18, 2006. (Admin. Record ("AR") 116-20.) The Social Security Administration denied plaintiff's application initially on June 22, 2008, and upon reconsideration on July 8, 2008. (AR 90-99.) Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding plaintiff's claim on May 11, 2009. (AR 50-85, 105.) Plaintiff was represented by counsel at the hearing and testified. A medical expert, Dr. Sukhdev S. Khangura, and a vocational expert, Mr. Jim Van Eck, also testified at the hearing. (AR 50-85.)

In a written decision dated June 16, 2009, the ALJ denied plaintiff's applications for benefits based on a finding that, while plaintiff was incapable of performing past relevant work as a construction laborer, plaintiff was indeed "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[3] (AR 22-23.) The

---

[2]  Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant the issues presented by the parties' respective motions.

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security

1    ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

2    plaintiff's request for review. (AR 1-5.) Plaintiff subsequently filed this action.

3        B.    Summary of the ALJ's Findings

4            The ALJ conducted the required five-step evaluation and concluded that plaintiff

5    was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not

6    engaged in substantial gainful employment since April 18, 2006, the alleged date of onset of

7    disability used by the ALJ. (AR 16, 18.) At step two, the ALJ concluded that plaintiff had the

8    "severe" impairments of: "degenerative joint and Legg Perthes disease." (AR 18.) At step three,

---

Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the applicable regulations, specifically, Listing 1.02.  (Id. (citing 20 C.F.R. pt. 404, subpt. P, app.1).)

Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk for at least 2 hours, and sit without limitation, in an 8 hour day.  The claimant must be allowed to change position at will.  He cannot climb ladders and ropes, but he can occasionally climb stairs.  The claimant can occasionally stoop, crawl, crouch, and balance.  He cannot work around machinery or at heights, and can occasionally walk on uneven surfaces.

(AR 19.)  In assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found that plaintiff was not credible to the extent that plaintiff's testimony conflicted with the RFC.  (See AR 20-21.)  The ALJ also addressed the opinion of "a physician"[4] dated August 2008 and February and April 2009, and gave it "minimal weight" because the opinion failed to "suggest any specific limitations, and has not provided any objective evidence" supporting the physician's opinion that plaintiff is "unable to work."  (See AR 20.)

Having assessed plaintiff's RFC, the ALJ found at step four that given plaintiff's limitations, plaintiff "is unable to perform any past relevant work."  (AR 21.)  At step five, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (AR 22.)  The ALJ relied on the vocational expert's testimony, and found that plaintiff could perform jobs such as cashier, telephone-information-quotation-clerk, and business-document preparer.  (AR 22.)  Because the ALJ found that plaintiff could perform such work, a "finding of 'not disabled' is therefore appropriate."  (AR 23.)

---

[4] While the ALJ did not identify this "physician," a review of the records suggests that the physician is Dr. Glenn E. Millar.  (AR 295-305.)

II.     STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "To determine whether substantial evidence supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." Andrews, 53 F.3d at 1039.

5

"If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 637 (9th Cir. 1981). However, the court's review is constrained to the reasons asserted by the ALJ in the ALJ's decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); accord Tommasetti, 533 F.3d at 1039 n.2 (declining to review reasons provided by the district court in support of the ALJ's credibility decision that were not "expressly relied on" by the ALJ during the administrative proceedings); accord Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (noting that the Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision"); Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of the ALJ's conclusion – especially when his opinion indicates that the conclusion may have been based exclusively upon an improper reason."); Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is appropriate when a decision does not adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can offer proper post hoc explanations for such unexplained conclusions," because "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council") (citation omitted).

Harmless error exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate non-disability determination. Tommasetti, 533 F.3d at 1038 (citations and internal quotation marks omitted). In other words, the court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)).

////

1  III.   DISCUSSION

2       A.   Meeting Or Equaling The Impairment At "Listing 1.02A" At Step Three

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations No. 4." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) . The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." Id. (citing 20 C.F.R. § 404.1525.) If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. Id. (citing 20 C.F.R. § 404.1520(d).)

A claimant bears the burden of proving that his impairments satisfy all the criteria of a particular listing. Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify") (emphasis in original); Tackett, 180 F.3d at 1099 ("[claimant] had to establish that he met or equaled each of the following characteristics of" a listing).

Here, at step three, the ALJ found that plaintiff's impairments were not severe enough to meet or equal the impairment at Listing 1.02A ("Listing 1.02A").[5] (AR 18.) To support this finding, the ALJ explained that "at the hearing, the medical expert testified that the record does not contain the objective evidence required by 1.02 of the Listings." (AR 18.)

Listing 1.02A states:

> Major dysfunction of a joint(s) (due to any cause):
> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

---

[5] The requirements of Listing 1.02A are at 20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A.

7

|   |   |
|---|---|
| 1 | A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), *resulting in inability to ambulate effectively, as defined in 1.00B2b*; |
| 2 |   |
| 3 | or |
| 4 | B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c. |

20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A (emphasis added).  Subsection (A) refers to Listing "1.00B2b" ("Listing 1.00(B)(2)(b)") with respect to ambulation, which provides,

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. *Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of <u>both upper extremities</u>*. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a *reasonable walking pace over a sufficient distance to be able to carry out activities of daily living*. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, *examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, <u>the inability to walk a block at a reasonable pace on rough or uneven surfaces</u>, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a <u>reasonable pace</u> with the use of a single hand rail.* The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b) (emphasis added).

In short, Listing 1.02A requires a claimant to prove (1) major dysfunction of a joint, such as a hip joint, (2) resulting in an inability to ambulate effectively under Listing

8

1.00(B)(2)(b).  See 20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A.  An "inability to ambulate effectively, as defined in 1.00(B)(2)(b)," includes having to use a hand-held assistive device or devices that "limits the functioning of both upper extremities," and may include "the inability to walk a block at a reasonable pace on rough or uneven surfaces," and the inability to sustain a "reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," among other things.  20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b).

        1.        **Plaintiff's Argument**

Plaintiff argues that "the medical expert erroneously characterized the requirements of" Listing 1.02, and thus, that the ALJ committed error by relying upon that characterization.  (Pl.'s Mot. for Summ. J. at 9.)  Plaintiff argues that "[t]he ALJ's only explanation for the finding that Mr. Nester does not meet the listing is that 'the medical expert testified that the record does not contain the objective evidence required,' for the Listing." (Pl.'s Mot. for Summ. J. at 9.)

Plaintiff contends that the medical expert, Dr. Khangura, *actually* only testified that "he believes the Listing requires two joints, specifically 'two upper extremity joints, one joint *plus another* ambulating joint.'" (Id.; AR 83 (emphasis added).)  According to plaintiff, the medical expert also stated that Listing 1.02A requires "major dysfunction of *one joint with involvement of another major joint* . . . you can have two elbows or two shoulders, two upper extremity joints resulting in an inability to perform overhead or fine movements." (Id., AR 83 (emphasis added).)  Plaintiff argues that, when asked why plaintiff's hip condition did not meet the listing, the medical expert said the "main problem is in the hip and plus they're asking for *another joint* to affect ambulation." (Id., AR 83 (emphasis added).)

Plaintiff argues that the medical expert's testimony regarding the requirements of Listing 1.02A is "simply incorrect," because Listing 1.02A actually requires the impairment of *only one weight-bearing joint* (i.e. hip, knee, or ankle) which is "characterized by a deformity and chronic pain and stiffness along with limitation of motion which results in the inability to

9

ambulate effectively." (Id. at 9-10 (emphasis added).) According to plaintiff, because plaintiff "has a documented impairment of his right hip, a weight bearing joint, which makes him unable to ambulate effectively," plaintiff necessarily "meets the requirements of Listing 1.02A." (Id. at 10.)

    2. **Defendant's Argument**

Defendant argues that "although Dr. Khangura appeared to misread the listing's requirement regarding number of joints involved, this error does not affect the ALJ's ultimate conclusion that Plaintiff did not meet the listing." (Def.'s Opp'n & Cross-Motion for Summ. J. at 5-6.) This assertion is because, according to defendant, "[e]ven if [p]laintiff had sufficient deformity of a major joint to satisfy the introductory paragraph's requirements, he has not shown an inability to ambulate effectively" under Listing 1.00(B)(2)(b). (Id. at 6.)

Defendant argues that plaintiff has not shown a need for "assistive devices" to help his ambulation. (Id.) Specifically, defendant argues that "although [plaintiff] alleges the need to use a cane, the record does not show the prescription of a cane, as Plaintiff conceded at the hearing." (Id. (citing AR 61.) Defendant also argues that, "[a]t any rate, the use of *one cane* would not establish inability to ambulate effectively as defined by" Listing 1.00(B)(2)(b). (Id. (emphasis added).) Defendant concludes that, "because [p]laintiff has not shown that he lacks the ability to ambulate effectively, he has not carried his burden at step three, and the ALJ properly continued to step four . . . ." (Id.)

    3. **Plaintiff's Response**

Plaintiff argues that, contrary to defendant's assertion, the medical expert's misreading of the requirements of Listing 1.02A *did* directly affect the ALJ's ultimate conclusion. (Pl.'s Opp'n at 1.) Plaintiff argues that defendant's position "ignores the actual text of the [ALJ's] decision on this issue, which states simply that 'the medical expert testified that the record does not contain the objective evidence required" for the Listing. (Id.) Plaintiff contends that "[t]he only support in the hearing decision for the ultimate conclusion that

Plaintiff did not meet the Listing is the [medical expert]'s incorrect statement of the requirements for the Listing." (Id.) Plaintiff also argues that the record confirms plaintiff cannot ambulate effectively under Listing 1.00(B)(2)(b). (Id. (citing various portions of the record).)

4.  **Analysis**

As a review of the hearing transcript confirms, the medical expert indeed testified that to meet or equal Listing 1.02A, "you have to have *two* joints involved with joint dysfunction and he has one, *one* joint." (AR 64 (emphasis added).) The medical expert informed the ALJ that while plaintiff has one joint dysfunction (i.e., hip), plaintiff's lack of a second joint dysfunction necessarily means plaintiff does not "meet or equal" the requirements of Listing 1.02A. (AR 64-65 ("And according to the listing, I was looking at 1.01[6], he does not meet or equal, you have to have two joints involved with joint dysfunction and he has one, one joint.").)

The ALJ adopted the medical expert's testimony and cited it as the sole support for the ALJ's conclusion at step three. (AR 18.) Specifically, the ALJ held that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . . [Citations.] At the hearing, the medical expert testified that the record does not contain the objective evidence required by 1.02 of the Listings." These two sentences represent the entirety of the ALJ's findings of fact and law at step three. (Id. (internal citations omitted).)[7]

---

[6] While the medical expert referred to Listing "1.01" when testifying, "Listing 1.01" is only a heading. The textual substance at issue begins at Listing 1.02. 20 C.F.R. pt. 404, subpt. P, app.1, §§ 1.01-1.02A.

[7] In the ALJ's discussion of plaintiff's RFC and at step four, the ALJ also states that "the medical expert noted that the severity of the claimant's musculoskeletal impairment does not meet the severity depicted in 1.02 of the Listings of Impairments," and "stated that the claimant can occasionally walk, and noted that the record does not reflect that the claimant's use of a cane is medically necessary." (AR 20.)

11

1       Plaintiff is correct that the medical expert erroneously read the requirements of Listing 1.02A.  The plain text of Listing 1.02A does not require that "two joints" be involved with joint dysfunction.  20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A.  Instead, it requires *one* major joint dysfunction "resulting in inability to ambulate effectively."  Id.  Defendant also admits that the medical expert appeared to misread the requirements of Listing 1.02A.  (Def.'s Opp'n & Cross-Motion for Summ. J. at 5-6 (". . . Dr. Khangura appeared to misread the listing's requirement regarding number of joints involved . . . .").)

        While the medical expert misread the requirements of Listing 1.02A and the ALJ relied entirely on the misreading, defendant argues that "this error does not affect the ALJ's ultimate conclusion that Plaintiff did not meet the listing."  (Def.'s Opp'n & Cross-Motion for Summ. J. at 5-6.)  Defendant essentially argues that, even if plaintiff's hip dysfunction met the first element of Listing 1.02A, plaintiff failed to prove an "inability to ambulate effectively" under the second element of that Listing, and thus that any error by the medical expert and/or ALJ was harmless.  (Id.)

        In light of the foregoing, the undersigned cannot find that the ALJ's reliance on the medical expert's erroneous testimony as to Listing 1.02A constitutes harmless error.  Given the ALJ's minimal findings at step three, the undersigned cannot find that it is "clear from the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability determination.'"  See Robbins, 466 F.3d at 885; Tommasetti, 533 F.3d at 1038.  Evidence in the record suggests plaintiff does have difficulties ambulating, so it cannot be said that plaintiff failed to produce evidence on the issue – instead, the ALJ failed to make necessary findings regarding that evidence.  Indeed, portions of the ALJ's decision recognize certain limitations on plaintiff's ability to walk.  For instance, plaintiff proffered evidence sufficient to convince the ALJ that plaintiff "can occasionally climb stairs" (AR 19), "can occasionally walk on uneven surfaces" (id.), and that plaintiff's "hip impairment limits his ability to stand and walk for prolonged periods of time" (AR 21).  However, the ALJ did not make findings regarding whether these

1  limitations (and/or others) actually amount to an "inability to ambulate" pursuant to Listing
2  1.00(B)(2)(b).

3  Defendant urges a narrow definition of "inability to ambulate" under Listing
4  1.00(B)(2)(b) and argues that the record confirms plaintiff does not meet the definition.
5  Defendant argues that, because the record does not reveal that plaintiff uses "a hand-held
6  assistive device(s) that limits the functioning of both upper extremities" — such as "a walker,
7  two canes, or two crutches"— plaintiff necessarily does not have an "inability to ambulate
8  effectively" under Listing 1.00(B)(2)(b). (Def.'s Opp'n & Cross-Motion for Summ. J. at 5-6
9  (citing 20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b)).) Defendant suggests that, because
10 plaintiff at most[8] uses *one* cane rather than *two* canes (or a two-handed assistive device like a
11 walker), this does not establish plaintiff's "inability to ambulate effectively" under the Listing.
12 (Id.)

13 Defendant's focus on whether plaintiff uses one or two canes ignores that a
14 "limited functioning of both upper extremities" is just one aspect of the Listing's "*general[]*"
15 definition of "ineffective ambulation." 20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b). The
16 plain text of the Listing goes on to describe *other* limitations on ambulation — limitations
17 separate and apart from needing to use two-handed assistive devices. For instance, Listing
18 1.00(B)(2)(b)(2) provides that "examples of ineffective ambulation *include, but are not limited
19 to,* the inability to walk without the use of a walker, two crutches or two canes, *the inability to
20 walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard
21 public transportation, the inability to carry out routine ambulatory activities, such as shopping
22 and banking, and the inability to climb a few steps at a reasonable pace with the use of a single
23 hand rail*." (Id. (emphasis added).) This non-exhaustive list separates an inability to walk

---

[8] The ALJ found that "[i]n February and April 2009, the claimant used a cane and walked with an antalgic gait." (AR 19.) The ALJ also found that "[a]lthough the claimant reported that he uses a cane, the record does not show that any physician has prescribed an assistive device, or suggested that its use is medically necessary." (AR 21.)

13

without two-handed assistive devices from, for instance, an inability to walk "on rough or uneven surfaces," an inability to "use standard public transportation," and an inability to "climb a few steps at a reasonable pace." (Id.) If the use of two-handed assistive devices was always required in order to meet definition of "ineffective ambulation" under this Listing, the other components of the list would be superfluous.

Defendant's construction of the definition of "ineffective ambulation" also fails to acknowledge the Listing's repeated references to the "pace" of ambulation. Again, Listing 1.00(B)(2)(b) provides, "To ambulate effectively, individuals must be capable of sustaining a *reasonable walking pace* over a sufficient distance to be able to carry out activities of daily living . . . examples of ineffective ambulation include, but are not limited to . . . the inability to walk a block *at a reasonable pace* on rough or uneven surfaces . . . the inability to climb a few steps *at a reasonable pace* with the use of a single hand rail." 20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b) (emphasis added).

Despite the Listing's focus on "pace" of ambulation, the ALJ did not make any factual findings regarding the "pace" of plaintiff's ambulation. For example, while the ALJ found that plaintiff "can occasionally climb stairs" (AR 19), "can occasionally walk on uneven surfaces" (id.), and that plaintiff's "hip impairment limits his ability to stand and walk for prolonged periods of time" (AR 21), the ALJ did not attempt to reconcile these limitations with having a "reasonable walking pace" for purposes of Listing 1.00(B)(2)(b). Plaintiff's ability to perform "occasional" climbing and walking on uneven surfaces does not necessarily speak to plaintiff's "pace" of ambulation for purposes of Listing 1.00(B)(2)(b). Neither the medical expert nor the ALJ made findings of fact regarding plaintiff's limitations and their impact upon his walking pace.[9] Therefore, it remains possible that plaintiff's mobility limitations fit within

---

[9] The undersigned's review is constrained to the reasons asserted by the ALJ in the ALJ's decision. Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."); accord

the definition of an "inability to ambulate effectively" under Listings 1.02A and 1.00(B)(2)(b). Accordingly, the undersigned cannot find that it is "clear from the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability determination.'" See Robbins, 466 F.3d at 885; Tommasetti, 533 F.3d at 1038.

### B. Remand

The decision of whether to remand for further proceedings or simply to award benefits is within the court's discretion. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Generally, the court should direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings. Varney v. Sec'y of Health and Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988). The undersigned finds that the ALJ's step three determination was improper and that the ALJ was required to make findings regarding plaintiff's ambulatory abilities under Listings 1.02A and 1.00(B)(2)(b). Because these findings may require taking additional testimony from a medical expert, such as testimony regarding plaintiff's pace of ambulation given his various limitations, the undersigned concludes that remand is appropriate. Although the undersigned understands the importance of expediting disability claims, Varney, 859 F.2d at 1401, remanding this case for further administrative proceedings will serve a useful purpose in the resolution of this case. On remand, the ALJ must determine at step three whether plaintiff's limitations meet or equal Listing 1.02A, and such determination should address all aspects of Listings 1.02A and 1.00(B)(2)(b) as detailed above.

Because the undersigned finds both that error occurred at step three and that such error was not clearly inconsequential to the ultimate nondisability determination, the undersigned need not analyze plaintiff's remaining arguments in support of summary judgment. Plaintiff's remaining arguments, as they derive, at least in part, from the errors addressed above. Because the undersigned remands this matter to the agency for further proceedings, the

---

Tommasetti, 533 F.3d at 1039 n.2; Pinto, 249 F.3d at 847; Gonzalez, 914 F.2d at 1201; Barbato, 923 F. Supp. at 1276 n.2.

undersigned will not specifically address plaintiff's remaining arguments.

V.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Pl.'s Mot. for Summ. J., Dkt. No. 16) is granted;

2. Defendant's cross-motion for summary judgment (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 17) is denied; and

3. This case is remanded to the ALJ for further proceedings consistent with this order pursuant to 42 U.S.C. § 405(g), sentence four. The Clerk of Court is directed to enter a separate judgment herein, as provided for under Rules 58 and 79(a) of the Federal Rules of Civil Procedure. See Shalala v. Schaefer, 509 U.S. 292, 296-97 (1993).

IT IS SO ORDERED.

DATED: February 10, 2012

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE