IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL B. NESTER,

       Plaintiff,                    No. 2:10-cv-01685 KJN

     v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

       Defendant.               <u>ORDER</u>

_____/

        Plaintiff, who is represented by counsel, seeks judicial review of a final decision

of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's

applications for Disability Insurance Benefits under Title II of the Social Security Act ("Act")

and Supplemental Security Income benefits under Title XVI of the Act.[1]  In his motion for

summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case

erred: (1) at step three, by "incorrectly finding that Plaintiff did not meet [Social Security

Administration] Listing 1.02A" because the ALJ improperly relied on an "incorrect statement" of

that listing by the medical expert; (2) by failing to give "proper weight to the medical records

_____

[1]  This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented to proceed before a United States Magistrate Judge, 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301. (Dkt. Nos. 7, 12.)

1  from Placer County Medical Clinic"; (3) by "improperly discount[ing]" plaintiff's credibility;

2  and (4) at steps four and five in the "disability analysis" and in reliance upon the [Social Security

3  Administration] Medical-Vocational guideline regulations ("the grids").  (See generally Pl.'s

4  Mot. for Summ. J., Dkt. No. 16.)  Defendant filed an opposition to plaintiff's motion and a cross-

5  motion for summary judgment.  (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 17.)

6  Plaintiff filed an opposition to the Commissioner's motion.  (Pl.'s Opp'n, Dkt. No. 18.)  For the

7  reasons stated below, the court grants plaintiff's motion for summary judgment and denies the

8  Commissioner's cross-motion for summary judgment.

9  I.     BACKGROUND[2]

10         On March 4, 2008, plaintiff filed applications for Supplemental Security Income

11  and Disability Insurance Benefits, both of which alleged a disability onset date of April 18, 2006.

12  (Admin. Record ("AR") 116-20.)  The Social Security Administration denied plaintiff's

13  application initially on June 22, 2008, and upon reconsideration on July 8, 2008.  (AR 90-99.)

14  Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding

15  plaintiff's claim on May 11, 2009.  (AR 50-85, 105.)  Plaintiff was represented by counsel at the

16  hearing and testified.  A medical expert, Dr. Sukhdev S. Khangura, and a vocational expert, Mr.

17  Jim Van Eck, also testified at the hearing. (AR 50-85.)

18         In a written decision dated June 16, 2009, the ALJ denied plaintiff's applications

19  for benefits based on a finding that, while plaintiff was incapable of performing past relevant

20  work as a construction laborer, plaintiff was indeed "capable of making a successful adjustment

21  to other work that exists in significant numbers in the national economy."[3]  (AR 22-23.)  The

22

23         [2]  Because the parties are familiar with the factual background of this case, including
   plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts
24  related to plaintiff's impairments and medical history will be addressed insofar as they are relevant
   the issues presented by the parties' respective motions.

25

26         [3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. §§ 401 et seq.  Generally speaking, Supplemental Security

1    ALJ's decision became the final decision of the Commissioner when the Appeals Council denied

2    plaintiff's request for review.  (AR 1-5.)  Plaintiff subsequently filed this action.

3          B.    Summary of the ALJ's Findings

4                The ALJ conducted the required five-step evaluation and concluded that plaintiff

5    was not disabled within the meaning of the Act.  At step one, the ALJ found that plaintiff had not

6    engaged in substantial gainful employment since April 18, 2006, the alleged date of onset of

7    disability used by the ALJ.  (AR 16, 18.)  At step two, the ALJ concluded that plaintiff had the

8    "severe" impairments of: "degenerative joint and Legg Perthes disease." (AR 18.)  At step three,

9

10   Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit
     schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful
11   activity" due to "any medically determinable physical or mental impairment which can be expected
     to result in death or which has lasted or can be expected to last for a continuous period of not less
12   than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation
     governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976;
13   see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has
     summarized the sequential evaluation as follows:

14                Step one:  Is the claimant engaging in substantial gainful
                  activity? If so, the claimant is found not disabled.  If not, proceed to
15                step two.

16                Step two:  Does the claimant have a "severe" impairment?  If
                  so, proceed to step three.  If not, then a finding of not disabled is
17                appropriate.

18                Step three:  Does the claimant's impairment or combination
                  of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
19                404, Subpt. P, App.1? If so, the claimant is automatically determined
                  disabled.  If not, proceed to step four.

20
                  Step four:  Is the claimant capable of performing his past
21                work? If so, the claimant is not disabled.  If not, proceed to step five.

22                Step five:  Does the claimant have the residual functional
                  capacity to perform any other work?  If so, the claimant is not
23                disabled.  If not, the claimant is disabled.

24   Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
     process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26   evaluation process proceeds to step five. Id.

1    the ALJ determined that plaintiff did not have an impairment or combination of impairments that

2    met or medically equaled one of the impairments listed in the applicable regulations, specifically,

3    Listing 1.02.  (Id. (citing 20 C.F.R. pt. 404, subpt. P, app.1).)

4            Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual

5    functional capacity ("RFC") as follows:

6            [T]he claimant has the residual functional capacity to perform a range of
             light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that
7            he can lift 20 pounds occasionally and 10 pounds frequently.  He can stand
             and/or walk for at least 2 hours, and sit without limitation, in an 8 hour
8            day.  The claimant must be allowed to change position at will.  He cannot
             climb ladders and ropes, but he can occasionally climb stairs.  The
9            claimant can occasionally stoop, crawl, crouch, and balance.  He cannot
             work around machinery or at heights, and can occasionally walk on
10           uneven surfaces.

11   (AR 19.)  In assessing plaintiff's RFC, the ALJ addressed plaintiff's testimony and found that

12   plaintiff was not credible to the extent that plaintiff's testimony conflicted with the RFC.  (See

13   AR 20-21.)  The ALJ also addressed the opinion of "a physician"[4] dated August 2008 and

14   February and April 2009, and gave it "minimal weight" because the opinion failed to "suggest

15   any specific limitations, and has not provided any objective evidence" supporting the physician's

16   opinion that plaintiff is "unable to work."  (See AR 20.)

17           Having assessed plaintiff's RFC, the ALJ found at step four that given plaintiff's

18   limitations, plaintiff "is unable to perform any past relevant work."  (AR 21.)  At step five, the

19   ALJ found that "considering the claimant's age, education, work experience, and residual

20   functional capacity, there are jobs that exist in significant numbers in the national economy that

21   the claimant can perform."  (AR 22.)  The ALJ relied on the vocational expert's testimony, and

22   found that plaintiff could perform jobs such as cashier, telephone-information-quotation-clerk,

23   and business-document preparer.  (AR 22.)  Because the ALJ found that plaintiff could perform

24   such work, a "finding of 'not disabled' is therefore appropriate."  (AR 23.)

25   ───────────────────────

26           [4]  While the ALJ did not identify this "physician," a review of the records suggests that the
     physician is Dr. Glenn E. Millar.  (AR 295-305.)

1   II.      STANDARDS OF REVIEW

2            The court reviews the Commissioner's decision to determine whether it is (1) free

3   of legal error, and (2) supported by substantial evidence in the record as a whole.  Bruce v.

4   Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th

5   Cir. 2009).  This standard of review has been described as "highly deferential."  Valentine v.

6   Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  "'Substantial evidence means

7   more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

8   reasonable mind might accept as adequate to support a conclusion."  Bray v. Comm'r of Soc.

9   Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035,

10  1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690.  "The ALJ is responsible for

11  determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

12  Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008)

13  ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").

14  Findings of fact that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g);

15  see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000).  "Where the evidence as a

16  whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the

17  ALJ's."  Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198

18  (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the

19  ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.

20  2005)).  However, the court "must consider the entire record as a whole and may not affirm

21  simply by isolating a 'specific quantum of supporting evidence.'"  Ryan, 528 F.3d at 1198

22  (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v.

23  Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "To determine whether substantial evidence

24  supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing

25  both the evidence that supports and that which detracts from the ALJ's conclusion."  Andrews,

26  53 F.3d at 1039.

5

1    "If additional proceedings can remedy defects in the original administrative

2    proceedings, a social security case should be remanded."  Lewin v. Schweiker, 654 F.2d 631, 637

3    (9th Cir. 1981).  However, the court's review is constrained to the reasons asserted by the ALJ in

4    the ALJ's decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the

5    reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a

6    ground upon which he did not rely.");  accord Tommasetti, 533 F.3d at 1039 n.2 (declining to

7    review reasons provided by the district court in support of the ALJ's credibility decision that

8    were not "expressly relied on" by the ALJ during the administrative proceedings);  accord Pinto v.

9    Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (noting that the Court "cannot affirm the decision

10   of an agency on a ground that the agency did not invoke in making its decision");  Gonzalez v.

11   Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[W]e are wary of speculating about the basis of

12   the ALJ's conclusion – especially when his opinion indicates that the conclusion may have been

13   based exclusively upon an improper reason.");  Barbato v. Comm'r of Soc. Sec. Admin., 923 F.

14   Supp. 1273, 1276 n.2 (C.D. Cal. 1996) (remand is appropriate when a decision does not

15   adequately explain how a decision was reached, "[a]nd that is so even if [the Commissioner] can

16   offer proper post hoc explanations for such unexplained conclusions," because "the

17   Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as

18   adopted by the Appeals Council") (citation omitted).

19          Harmless error exists when it is clear from the record that the ALJ's error was

20   inconsequential to the ultimate non-disability determination.  Tommasetti, 533 F.3d at 1038

21   (citations and internal quotation marks omitted).  In other words, the court will not reverse the

22   Commissioner's decision if it is based on harmless error, which exists only when it is "clear from

23   the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'"

24   Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, 454

25   F.3d 1050, 1055 (9th Cir. 2006)).

26   ////

6

III.    DISCUSSION

A.    Meeting Or Equaling The Impairment At "Listing 1.02A" At Step Three

At step three, the ALJ determines whether "a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations No. 4." Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) .  The Listing of Impairments describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." Id. (citing 20 C.F.R. § 404.1525.)  If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. Id. (citing 20 C.F.R. § 404.1520(d).)

A claimant bears the burden of proving that his impairments satisfy all the criteria of a particular listing.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990) ("[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify") (emphasis in original); Tackett, 180 F.3d at 1099 ("[claimant] had to establish that he met or equaled each of the following characteristics of" a listing).

Here, at step three, the ALJ found that plaintiff's impairments were not severe enough to meet or equal the impairment at Listing 1.02A ("Listing 1.02A").[5] (AR 18.)  To support this finding, the ALJ explained that "at the hearing, the medical expert testified that the record does not contain the objective evidence required by 1.02 of the Listings." (AR 18.)

Listing 1.02A states:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

_____

[5]  The requirements of Listing 1.02A are at 20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A.

7

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), *resulting in inability to ambulate effectively, as defined in 1.00B2b*;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A (emphasis added).  Subsection (A) refers to Listing

"1.00B2b" ("Listing 1.00(B)(2)(b)") with respect to ambulation, which provides,

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. *Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.* (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a *reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.* They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, *examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.* The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b) (emphasis added).

In short, Listing 1.02A requires a claimant to prove (1) major dysfunction of a

joint, such as a hip joint, (2) resulting in an inability to ambulate effectively under Listing

8

1.00(B)(2)(b).  See 20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A.  An "inability to ambulate

effectively, as defined in 1.00(B)(2)(b)," includes having to use a hand-held assistive device or

devices that "limits the functioning of both upper extremities," and may include "the inability to

walk a block at a reasonable pace on rough or uneven surfaces," and the inability to sustain a

"reasonable walking pace over a sufficient distance to be able to carry out activities of daily

living," among other things.  20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b).

       1.    **Plaintiff's Argument**

      Plaintiff argues that "the medical expert erroneously characterized the

requirements of" Listing 1.02, and thus, that the ALJ committed error by relying upon that

characterization.  (Pl.'s Mot. for Summ. J. at 9.)  Plaintiff argues that "[t]he ALJ's only

explanation for the finding that Mr. Nester does not meet the listing is that 'the medical expert

testified that the record does not contain the objective evidence required,' for the Listing."  (Pl.'s

Mot. for Summ. J. at 9.)

      Plaintiff contends that the medical expert, Dr. Khangura, *actually* only testified

that "he believes the Listing requires two joints, specifically 'two upper extremity joints, one

joint *plus another* ambulating joint.'"  (Id.; AR 83 (emphasis added).)  According to plaintiff, the

medical expert also stated that Listing 1.02A requires "major dysfunction of *one joint with*

*involvement of another major joint* . . . you can have two elbows or two shoulders, two upper

extremity joints resulting in an inability to perform overhead or fine movements."  (Id., AR 83

(emphasis added).)  Plaintiff argues that, when asked why plaintiff's hip condition did not meet

the listing, the medical expert said the "main problem is in the hip and plus they're asking for

*another joint* to affect ambulation." (Id., AR 83 (emphasis added).)

      Plaintiff argues that the medical expert's testimony regarding the requirements of

Listing 1.02A is "simply incorrect," because Listing 1.02A actually requires the impairment of

*only one weight-bearing joint* (i.e. hip, knee, or ankle) which is "characterized by a deformity

and chronic pain and stiffness along with limitation of motion which results in the inability to

1    ambulate effectively." (Id. at 9-10 (emphasis added).)  According to plaintiff, because plaintiff

2    "has a documented impairment of his right hip, a weight bearing joint, which makes him unable

3    to ambulate effectively," plaintiff necessarily "meets the requirements of Listing 1.02A." (Id. at

4    10.)

5           2.    **Defendant's Argument**

6           Defendant argues that "although Dr. Khangura appeared to misread the listing's

7    requirement regarding number of joints involved, this error does not affect the ALJ's ultimate

8    conclusion that Plaintiff did not meet the listing." (Def.'s Opp'n & Cross-Motion for Summ. J.

9    at 5-6.)  This assertion is because, according to defendant, "[e]ven if [p]laintiff had sufficient

10   deformity of a major joint to satisfy the introductory paragraph's requirements, he has not

11   shown an inability to ambulate effectively" under Listing 1.00(B)(2)(b). (Id. at 6.)

12          Defendant argues that plaintiff has not shown a need for "assistive devices" to

13   help his ambulation. (Id.)  Specifically, defendant argues that "although [plaintiff] alleges the

14   need to use a cane, the record does not show the prescription of a cane, as Plaintiff conceded at

15   the hearing." (Id. (citing AR 61.)  Defendant also argues that, "[a]t any rate, the use of *one cane*

16   would not establish inability to ambulate effectively as defined by" Listing 1.00(B)(2)(b). (Id.

17   (emphasis added).)  Defendant concludes that, "because [p]laintiff has not shown that he lacks

18   the ability to ambulate effectively, he has not carried his burden at step three, and the ALJ

19   properly continued to step four . . . ." (Id.)

20          3.    **Plaintiff's Response**

21          Plaintiff argues that, contrary to defendant's assertion, the medical expert's

22   misreading of the requirements of Listing 1.02A *did* directly affect the ALJ's ultimate

23   conclusion. (Pl.'s Opp'n at 1.)  Plaintiff argues that defendant's position "ignores the actual text

24   of the [ALJ's] decision on this issue, which states simply that 'the medical expert testified that

25   the record does not contain the objective evidence required" for the Listing. (Id.)  Plaintiff

26   contends that "[t]he only support in the hearing decision for the ultimate conclusion that

1  Plaintiff did not meet the Listing is the [medical expert]'s incorrect statement of the

2  requirements for the Listing." (Id.)  Plaintiff also argues that the record confirms plaintiff

3  cannot ambulate effectively under Listing 1.00(B)(2)(b).  (Id. (citing various portions of the

4  record).)

5      4.    **Analysis**

6          As a review of the hearing transcript confirms, the medical expert indeed testified

7  that to meet or equal Listing 1.02A, "you have to have *two* joints involved with joint

8  dysfunction and he has one, *one* joint."  (AR 64 (emphasis added).)  The medical expert

9  informed the ALJ that while plaintiff has one joint dysfunction (i.e., hip), plaintiff's lack of a

10  second joint dysfunction necessarily means plaintiff does not "meet or equal" the requirements

11  of Listing 1.02A.  (AR 64-65 ("And according to the listing, I was looking at 1.01[6], he does not

12  meet or equal, you have to have two joints involved with joint dysfunction and he has one, one

13  joint.").)

14          The ALJ adopted the medical expert's testimony and cited it as the sole support

15  for the ALJ's conclusion at step three.  (AR 18.)  Specifically, the ALJ held that "[t]he claimant

16  does not have an impairment or combination of impairments that meets or medically equals one

17  of the listed impairments . . . . [Citations.]  At the hearing, the medical expert testified that the

18  record does not contain the objective evidence required by 1.02 of the Listings."  These two

19  sentences represent the entirety of the ALJ's findings of fact and law at step three.  (Id. (internal

20  citations omitted).)[7]

21

22      [6]  While the medical expert referred to Listing "1.01" when testifying, "Listing 1.01" is only
    a heading.  The textual substance at issue begins at Listing 1.02.  20 C.F.R. pt. 404, subpt. P, app.1,
23  §§ 1.01-1.02A.

24      [7]  In the ALJ's discussion of plaintiff's RFC and at step four, the ALJ also states that "the
    medical expert noted that the severity of the claimant's musculoskeletal impairment does not meet
25  the severity depicted in 1.02 of the Listings of Impairments," and "stated that the claimant can
    occasionally walk, and noted that the record does not reflect that the claimant's use of a cane is
26  medically necessary."  (AR 20.)

1          Plaintiff is correct that the medical expert erroneously read the requirements of

2  Listing 1.02A.  The plain text of Listing 1.02A does not require that "two joints" be involved

3  with joint dysfunction.  20 C.F.R. pt. 404, subpt. P, app.1, § 1.02A.  Instead, it requires *one*

4  major joint dysfunction "resulting in inability to ambulate effectively."  <u>Id.</u>  Defendant also

5  admits that the medical expert appeared to misread the requirements of Listing 1.02A.  (Def.'s

6  Opp'n & Cross-Motion for Summ. J. at 5-6 (". . . Dr. Khangura appeared to misread the listing's

7  requirement regarding number of joints involved . . . .").)

8          While the medical expert misread the requirements of Listing 1.02A and the ALJ

9  relied entirely on the misreading, defendant argues that "this error does not affect the ALJ's

10  ultimate conclusion that Plaintiff did not meet the listing."  (Def.'s Opp'n & Cross-Motion for

11  Summ. J. at 5-6.)  Defendant essentially argues that, even if plaintiff's hip dysfunction met the

12  first element of Listing 1.02A, plaintiff failed to prove an "inability to ambulate effectively"

13  under the second element of that Listing, and thus that any error by the medical expert and/or

14  ALJ was harmless.  (<u>Id.</u>)

15          In light of the foregoing, the undersigned cannot find that the ALJ's reliance on

16  the medical expert's erroneous testimony as to Listing 1.02A constitutes harmless error.  Given

17  the ALJ's minimal findings at step three, the undersigned cannot find that it is "clear from the

18  record that [the] ALJ's error was 'inconsequential to the ultimate nondisability determination.'"

19  <u>See</u> <u>Robbins</u>, 466 F.3d at 885; <u>Tommasetti</u>, 533 F.3d at 1038.  Evidence in the record suggests

20  plaintiff does have difficulties ambulating, so it cannot be said that plaintiff failed to produce

21  evidence on the issue – instead, the ALJ failed to make necessary findings regarding that

22  evidence.  Indeed, portions of the ALJ's decision recognize certain limitations on plaintiff's

23  ability to walk.  For instance, plaintiff proffered evidence sufficient to convince the ALJ that

24  plaintiff "can occasionally climb stairs" (AR 19), "can occasionally walk on uneven surfaces"

25  (<u>id.</u>), and that plaintiff's "hip impairment limits his ability to stand and walk for prolonged

26  periods of time" (AR 21).  However, the ALJ did not make findings regarding whether these

1   limitations (and/or others) actually amount to an "inability to ambulate" pursuant to Listing

2   1.00(B)(2)(b).

3          Defendant urges a narrow definition of "inability to ambulate" under Listing

4   1.00(B)(2)(b) and argues that the record confirms plaintiff does not meet the definition.

5   Defendant argues that, because the record does not reveal that plaintiff uses "a hand-held

6   assistive device(s) that limits the functioning of both upper extremities" — such as "a walker,

7   two canes, or two crutches"— plaintiff necessarily does not have an "inability to ambulate

8   effectively" under Listing 1.00(B)(2)(b).  (Def.'s Opp'n & Cross-Motion for Summ. J. at 5-6

9   (citing 20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b)).)  Defendant suggests that, because

10  plaintiff at most[8] uses *one* cane rather than *two* canes (or a two-handed assistive device like a

11  walker), this does not establish plaintiff's "inability to ambulate effectively" under the Listing.

12  (Id.)

13          Defendant's focus on whether plaintiff uses one or two canes ignores that a

14  "limited functioning of both upper extremities" is just one aspect of the Listing's *general[]*

15  definition of "ineffective ambulation."  20 C.F.R. pt. 404, subpt. P, app.1, § 1.00(B)(2)(b).  The

16  plain text of the Listing goes on to describe *other* limitations on ambulation — limitations

17  separate and apart from needing to use two-handed assistive devices.  For instance, Listing

18  1.00(B)(2)(b)(2) provides that "examples of ineffective ambulation *include, but are not limited*

19  *to,* the inability to walk without the use of a walker, two crutches or two canes, *the inability to*

20  *walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard*

21  *public transportation, the inability to carry out routine ambulatory activities, such as shopping*

22  *and banking, and the inability to climb a few steps at a reasonable pace with the use of a single*

23  *hand rail*."  (Id. (emphasis added).)  This non-exhaustive list separates an inability to walk

24  _____

25      [8]  The ALJ found that "[i]n February and April 2009, the claimant used a cane and walked
    with an antalgic gait."  (AR 19.)  The ALJ also found that "[a]lthough the claimant reported that he
26  uses a cane, the record does not show that any physician has prescribed an assistive device, or
    suggested that its use is medically necessary."  (AR 21.)

1   without two-handed assistive devices from, for instance, an inability to walk "on rough or

2   uneven surfaces," an inability to "use standard public transportation," and an inability to "climb

3   a few steps at a reasonable pace."  (Id.)  If the use of two-handed assistive devices was always

4   required in order to meet definition of "ineffective ambulation" under this Listing, the other

5   components of the list would be superfluous.

6           Defendant's construction of the definition of "ineffective ambulation" also fails

7   to acknowledge the Listing's repeated references to the "pace" of ambulation.  Again, Listing

8   1.00(B)(2)(b) provides, "To ambulate effectively, individuals must be capable of sustaining a

9   *reasonable walking pace* over a sufficient distance to be able to carry out activities of daily

10  living . . . examples of ineffective ambulation include, but are not limited to . . . the inability to

11  walk a block *at a reasonable pace* on rough or uneven surfaces . . . the inability to climb a few

12  steps *at a reasonable pace* with the use of a single hand rail."  20 C.F.R. pt. 404, subpt. P,

13  app.1, § 1.00(B)(2)(b) (emphasis added).

14          Despite the Listing's focus on "pace" of ambulation, the ALJ did not make any

15  factual findings regarding the "pace" of plaintiff's ambulation.  For example, while the ALJ

16  found that plaintiff "can occasionally climb stairs" (AR 19), "can occasionally walk on uneven

17  surfaces" (id.), and that plaintiff's "hip impairment limits his ability to stand and walk for

18  prolonged periods of time" (AR 21), the ALJ did not attempt to reconcile these limitations with

19  having a "reasonable walking pace" for purposes of Listing 1.00(B)(2)(b).  Plaintiff's ability to

20  perform "occasional" climbing and walking on uneven surfaces does not necessarily speak to

21  plaintiff's "pace" of ambulation for purposes of Listing 1.00(B)(2)(b).  Neither the medical

22  expert nor the ALJ made findings of fact regarding plaintiff's limitations and their impact upon

23  his walking pace.[9]  Therefore, it remains possible that plaintiff's mobility limitations fit within

24

25          [9] The undersigned's review is constrained to the reasons asserted by the ALJ in the ALJ's
    decision.  Orn, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability
26  determination and may not affirm the ALJ on a ground upon which he did not rely."); accord

14

1    the definition of an "inability to ambulate effectively" under Listings 1.02A and 1.00(B)(2)(b).

2    Accordingly, the undersigned cannot find that it is "clear from the record that [the] ALJ's error

3    was 'inconsequential to the ultimate nondisability determination.'"  See Robbins, 466 F.3d at

4    885; Tommasetti, 533 F.3d at 1038.

5          B.    Remand

6                The decision of whether to remand for further proceedings or simply to award

7    benefits is within the court's discretion.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.

8    1989).  Generally, the court should direct the award of benefits in cases where no useful purpose

9    would be served by further administrative proceedings.  Varney v. Sec'y of Health and Human

10   Servs., 859 F.2d 1396, 1399 (9th Cir. 1988).  The undersigned finds that the ALJ's step three

11   determination was improper and that the ALJ was required to make findings regarding

12   plaintiff's ambulatory abilities under Listings 1.02A and 1.00(B)(2)(b).  Because these findings

13   may require taking additional testimony from a medical expert, such as testimony regarding

14   plaintiff's pace of ambulation given his various limitations, the undersigned concludes that

15   remand is appropriate.  Although the undersigned understands the importance of expediting

16   disability claims, Varney, 859 F.2d at 1401, remanding this case for further administrative

17   proceedings will serve a useful purpose in the resolution of this case.  On remand, the ALJ must

18   determine at step three whether plaintiff's limitations meet or equal Listing 1.02A, and such

19   determination should address all aspects of Listings 1.02A and 1.00(B)(2)(b) as detailed above.

20               Because the undersigned finds both that error occurred at step three and that such

21   error was not clearly inconsequential to the ultimate nondisability determination, the

22   undersigned need not analyze plaintiff's remaining arguments in support of summary judgment.

23   Plaintiff's remaining arguments, as they derive, at least in part, from the errors addressed above.

24   Because the undersigned remands this matter to the agency for further proceedings, the

25   ────────────────────────────

26   Tommasetti, 533 F.3d at 1039 n.2; Pinto, 249 F.3d at 847; Gonzalez, 914 F.2d at 1201; Barbato, 923
     F. Supp. at 1276 n.2.

1   undersigned will not specifically address plaintiff's remaining arguments.

2   V.    CONCLUSION

3           For the foregoing reasons, IT IS HEREBY ORDERED that:

4           1.      Plaintiff's motion for summary judgment (Pl.'s Mot. for Summ. J., Dkt.

5   No. 16) is granted;

6           2.      Defendant's cross-motion for summary judgment (Def.'s Opp'n & Cross-

7   Motion for Summ. J., Dkt. No. 17) is denied; and

8           3.      This case is remanded to the ALJ for further proceedings consistent with

9   this order pursuant to 42 U.S.C. § 405(g), sentence four.  The Clerk of Court is directed to enter

10  a separate judgment herein, as provided for under Rules 58 and 79(a) of the Federal Rules of

11  Civil Procedure.  See Shalala v. Schaefer, 509 U.S. 292, 296-97 (1993).

12          IT IS SO ORDERED.

13  DATED:  February 10, 2012

14

15

16  KENDALL J. NEWMAN
    UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23

24

25

26